Filed October 29, 1895.

---

No. 1,500.

## COBURN ET AL. *v.* BOSSERT.

MUNICIPAL CORPORATION. — *Local Sewer, Insufficiency.* — *Duty to Construct Additional Sewer.* —If it be found that one local sewer is inadequate to furnish sufficient drainage for the lots or property which it was intended or adapted to drain, the city is as much in duty bound to provide additional sewerage as it was bound to construct the first sewer.

SAME.—*Sewer.—Power of Officers to Act.*—The power in the officers to determine when they should act in the matter of constructing a sewer, carries with it the power to determine how frequently they shall act.

SAME.—*Sewer.—Power to Order Construction.—Discretion, Abuse of.* —The power to order the construction of a sewer for drainage rests upon the same ground as that of ordinary street improvements. The necessity for a sewer, like the necessity for a street improvement, must be determined by the municipal officers, and comes within their discretion; and unless it can be said that this discretion has been abused, the courts cannot interfere.

SAME.—*Local Sewers.—Double Assessment.—Special Benefits.—Frontage.*—Assessments for local sewers are not placed upon the basis of special benefits, like public sewers, but according to the frontage, as in street improvements, and a hardship may be imposed upon the land-owner by what amounts to a double assessment upon the whole area of his property, but relief therefrom must be sought in the Legislature and not in the courts.

SAME.—*Foreclosure of Sewer Assessment Lien.*—*Wife Proper Party Defendant.*—In an action to enforce a sewer assessment, the wife of the land-owner is a proper party defendant to answer to her interest, that her inchoate interest in the property may be foreclosed to satisfy the lien.

From the Marion Circuit Court.

*J. Coburn* and *E. E. Bassett*, for appellants.

*J. E. Bell*, for appellee.

REINHARD, C. J.—This is an action by the appellee against the appellants to enforce the collection of a sewer assessment made by the board of public works of the city of Indianapolis. The court overruled a demurrer to the complaint and the appellants answered and filed cross-complaints, to which demurrers were sustained, and a final judgment and decree was rendered foreclosing the lien. The principal question presented by the ruling upon the demurrers will more readily appear from a statement of so much of the facts as is necessary for that purpose, as they appear in the pleadings.

The appellant Henry Coburn who was the principal defendant below, his wife, Mary Coburn, being made a co-defendant, merely to answer to her interest, is the owner of a lot in the city of Indianapolis, which is located on what is known as "square 38." This lot is fifty feet wide and 202½ feet deep, running north and south, and having its frontage north on East New York street, between Delaware and Alabama, and abutting on the rear or south end on a narrow street or alley called Miami street, or alley. There are lots both to the east and west of the appellant's lot between Delaware and Alabama streets. There is a general or public sewer along Alabama street which was constructed in 1893, as also a local sewer in Miami street to connect

with said general or public sewer, and which was constructed about the same time as the public sewer, and for each of which the appellant had been duly assessed and had paid such assessments. The sewer, on account of which the present assessment was made, is a local sewer, running in front of and on the north end of appellant's lot in New York street, and is intended and adapted for the use of the lots adjacent to and bordering and abutting thereon, situated on the north side of New York street, and of the lots on the south side of New York street east of said appellant's lot and bordering on said streets, said lots having no alley in the rear in which a local sewer may be constructed, intended and adapted for local use. It is averred in the cross-complaint that this local sewer is necessary for said lots, and can only be located and constructed for said lots in the place where it is now situated, that being the only public way of approach to said lots from the Alabama street sewer, and that the same was intended, adapted and constructed for the sole use and benefit of the said lots, and for no other purpose whatever.

The point sought to be raised and presented is whether under these facts the city had a right to make the assessment to enforce which this action was brought. The contention of the learned counsel for appellants is that the city government having once exercised the power conferred upon it to order a local sewer, by which the appellant's lot would be drained into the public sewer, that power then became exhausted and could not be again exercised by ordering the construction of another local sewer on the opposite end of such lot. It is also contended by appellants' counsel that the averment that the present sewer was not adapted to drain or benefit the appellants' lot tendered an issue of fact which should have been submitted for trial.

By the act of the General Assembly, known as the city charter of Indianapolis, jurisdiction is expressly conferred upon the city to exercise the right of eminent domain and to provide upon what terms real estate in such city may be drained by means of surface or under drains over and across other real estate therein, etc. Acts 1891, p. 150. It is also provided by the same act that whenever a sewer to be constructed by the board of public works "be intended and adapted only for local use by property-holders along the line of the street or alley on which it is constructed, and in the opinion of such board is not intended or adapted for receiving sewerage from collateral drains, then, and in that case, the whole cost of the improvement shall be paid for by the property-holder abutting on such street or alley in the same manner and to the same extent as street improvements are paid for, except," etc. Acts 1891, page 181, section 86. By the amendment of 1893 it is provided that "the cost of such sewer shall be estimated according to the total number of square feet of property abutting on the line of said sewer, and such cost shall be apportioned on the lands or lots abutting thereon, in the proportion that their area bears to the total assessed area." Acts 1893, page 62, section 9.

We think the foregoing provisions grant to the city of. Indianapolis and its board of public works the right to provide for the drainage of its streets and lots, and to construct sewers, such as the one in controversy, and to assess the adjoining or abutting lots for the purpose of defraying the cost of construction. Aside from the authority thus expressly delegated, however, the power to construct such sewers is incidental to the power and authority usually and commonly exercised by a municipal corporation. *Leeds* v. *City of Richmond*, 102 Ind. 372; Elliott R. and S. 362, and authorities cited. By

the same authorities it is declared that the question, whether the right to construct such a sewer shall or shall not be exercised in any given case, is for the municipality and not for the courts to determine. The power of the city over its streets and alleys, and the power of eminent domain generally, as well as the general police power of the city, are continuing powers. If it be found that one local sewer is inadequate to furnish sufficient drainage for the lots or property which it was intended or adapted to drain, we know of no reason why the city is not as much in duty bound to provide additional sewerage as it was bound to construct the first sewer. It may be that the addition of new houses and other structures which require sewerage privileges is such that the original service is wholly insufficient, and it would be a very harsh rule indeed which would say to the municipal officers that having once acted in the matter they had debarred themselves from affording the citizens of the locality such additional facilities as they stood in need of. The power in the officers to determine when they should act in the premises carries with it the power to determine how frequently they shall act. The power is a continuing one, just as is the power to determine when a street should be improved. "This power," as an eminent law writer says, "must be lodged somewhere, and it is appropriately lodged with the local authorities. It is quite clear that courts cannot, on principle, be invested with the discretionary power of determining when highways should be improved; of necessity, the power must reside in some lawful body, and in no other can it be more appropriately placed than in one selected by, or coming from the immediate vicinity of the highway which is to be improved. Local officers are nearer the persons and property affected; they have a closer knowledge of the wants of the com-

munity, and they are more directly under the supervision of the inhabitants of the locality than other officers, and it is but reasonable to hold, as it is generally held, that they are the exclusive judges of when and in what manner the highway shall be improved. The right of the judiciary to interfere can only exist where there has been fraud or oppression, or some such wrong, constituting a plain abuse of discretion. Where there is a palpable abuse of discretion, then judicial aid may be successfully invoked, but so long as there is not abuse of discretion the courts cannot rightfully interfere, even though it may appear that the local authorities have erred in judgment." Elliott R. and S. 374, 375.

The power to order the construction of a sewer for drainage rests upon the same ground as that of ordinary street improvements. The necessity for a sewer, like the necessity for a street improvement, must be determined by the municipal officers, and comes within their discretion. Unless it can be said that this discretion has been abused, the courts cannot interfere. There is nothing in the pleadings before us that indicates an abuse of such discretion. Indeed, the cross-complaint concedes the necessity for the improvement, but avers that it will benefit only the lots on the side of the street opposite the lot of the appellants, and that it will not benefit their lot. But assessments for local sewers are not placed upon the basis of special benefits, like public sewers, the statute providing that the assessment shall be according to the frontage as in street improvements. Acts 1893, page 332.

For these reasons, it is our opinion that the court did not err in its rulings upon the demurrers to the complaint and answer and cross-complaint.

We also think the appellant Mary Coburn was a proper defendant to answer to her interest, and that her

inchoate interest in the property improved may be foreclosed to satisfy the lien.

It is proper to say that we think a great hardship has been imposed upon the appellants in this instance by what practically amounts to a double assessment upon the whole area of their property. The remedy for such hardships, however, must be sought in the Legislature and not in the courts.

Judgment affirmed.

Filed April 11, 1895; petition for rehearing overruled October 29, 1895.