# CHARLESTON.

Cain *et al. v.* City of Elkins *et al.*

Submitted January 12, 1905.   Decided January 24, 1905.

1. Municipal Corporations—*Taxes.*

    The City of Elkins has no authority under its charter act (chapter 151, Acts of 1901) to collect the whole or any part of the cost of the public sewers placed by it in its streets and alleys from the owners of the real estate abutting on such streets and alleys, by means of the levy of a special tax or assessment against them for that purpose. (p. 12.)

2. Municipal Corporations—*Taxes—Equity—Injunction.*

    If a municipal corporation acts *ultra vires* in the levying of a tax or assessment and attempts to collect it, equity has jurisdiction, upon proper bill filed by the party or parties, subject to such tax or assessment, to enjoin its collection. (p. 14.)

Appeal from Circuit Court, Randolph County.

Bill by James Cain and others against the City of Elkins and others. Decree for defendants and plaintiffs appeal.

*Reversed.*

Bent & Spears and J. L. Wamsley, for appellants.

W. B. Maxwell and B. M. Hoover, for appellees.

Cox, Judge:

On the 29th day of July, 1903, the common council of the City of Elkins adopted an ordinance, which in part is as follows:

"Be it ordained by the council of the City of Elkins:

"(1)   That the expense of all sewers hereafter put in any of the streets or alleys of the city shall be paid for as follows, one-third of the actual cost thereof shall be paid out of the City Treasury and the residue of said cost shall be assessed upon the real estate bounding and abutting upon the street or alley where such sewer is located and built in the proportion of the one-third of such cost upon property abutting on each side of the street or alley where such sewer is located and the said expense so taxed upon said real property shall be collected from the owner of said property as other taxes assessed thereon and collected.

"(2).   The expense of all such sewers may be paid out of the City Treasury as the work is done and subsequently, but within the same fiscal year that the work is completed, the two-thirds of the said expense assessed and collected from the owners of the adjoining and abutting real estate as provided in the first section of this ordinance."

After the adoption of the ordinance the city proceeded to construct sewers in a number of streets and alleys of the city and paid the cost thereof out of the city treasury; and upon report of its engineer of the cost of the work, the common council assessed against the owners of the real estate abutting the streets and alleys so sewered according to said ordinance, two-thirds of the cost of the construction of such sewers, proportioned according to the number of feet the real estate of each owner abutted on such streets and alleys ; and the City of Elkins by its collector was, at the time of the institution of this suit, proceeding to enforce the collection of such assessment against the plaintiffs and those for whom they sue.   Plaintiff James Cain and M. H. Hervey, suing on behalf of themselves and on behalf of the property owners of said city subject to such assessment, filed their bill in the circuit court of Randolph county, setting up these facts and making other proper allegations, against the city of Elkins, and its mayor, members of its common council, and its collector and treasurer, to enjoin and restrain them from collecting from the plaintiffs and those for whom they sue the said assessment or any portion of it and from selling the property levied on by the collector thereunder, and to declare such assessment void.   On the 15th day of February, 1904, the judge of the circuit court of Randolph county, in vacation, upon presentation of said bill, awarded to the plaintiffs a temporary injunction substantially as prayed for therein. Depositions were taken by the plaintiffs in support of the bill.   At the May term of said circuit court, 1904, the defendant City of Elkins filed its demurrer and answer.   The other defendants did not answer.   The answer of the City of Elkins admitted substantially the allegations of the bill in relation to the levy and attempted collection of the special assessment complained of, but claimed that the City of Elkins and its officers had the right and authority to so levy and collect said assessment under its charter act.   After the filing

of the answer, the City of Elkins made its motion to dissolve the injunction and dismiss the bill, and the case was heard by said circuit court in term on the 14th day of May, 1904, upon the bill and exhibits, separate answer of the City of Elkins, general replication, and upon said motion to dissolve the injunction and dismiss the bill, but not upon the depositions; and on that day a decree was entered by said circuit court wholly dissolving the injunction and dismissing the plaintiffs' bill, from which decree the plaintiffs appealed to this Court.

The first question raised by the record, which we desire to notice and which is vital to this case, is: Had the City of Elkins under its charter act, the authority to levy the special tax or assessment complained of in the plaintiffs' bill? This question goes to the very foundation of the case. If the City of Elkins had no such authority, then it has no defense to this suit appearing in the record, and all its acts in adopting the ordinance in pursuance of such supposed authority and in attempting to collect such special tax or assessment, are without authority. The authority claimed by the City of Elkins to levy and collect such special tax or assessment can only be exercised under the authority of the legislature. It is in its nature an extraordinary power, sometimes delegated by legislative authority to municipal corporations. Under such authority, where it exists, the individual, in addition to the payment of general taxes for the support of municipal government, is required to pay a special or local tax or assessment not levied generally upon all taxable property of the municipality.

The charter act under which the authority is claimed in this case is chapter 151 of the Acts of the Legislature of 1901. Under the powers conferred by this act the special tax or assessment complained of must be justified, if at all. Section 28 of this act is relied upon to show the existence of the authority to levy this special tax or assessment. This section is voluminous, but for the purposes of this case we deem it necessary to refer only to such parts of it as are considered material in determining the authority of the City of Elkins to levy and collect the special tax complained of. The parts considered material are as follows: "The council of said city shall have power to lay off, vacate, close, open, alter, grade, and keep in good repair the roads, streets,

alleys, pavements sidewalks, cross-walks, drains, sewers and gutters therein, for the use of the citizens or of the public, and to improve and light the same, and keep them free from obstructions of every kind; to regulate the width and kind of pavements and sidewalks, footways, drains and gutters and cause the same to be kept in good order, free and clean by the owners and occupants of real property next adjacent thereto;  *  *  *  *  to cause to be filled up, raised· or drained, by or at the expense of the owner any town lot or tract of land covered or subject to be covered by stagnant water;  *  *  *  *  and for the proper draining of city lots and other parcels of land by or at the expense of the owner or occupant thereof;  *  *  *  *  and generally to have power to make such measures. as are deemed necessary or advisable to protect persons or property, public or private, within the city; to preserve peace, quiet and good order therein, and to promote the health, safety, comfort and well being of the inhabitants thereof."

In considering this question of authority we are guided by well settled rules of construction. From the many decisions and authorities on this subject, we deduce the following as applicable to this case: Municipal corporations can exercise only such powers as by their charters are granted in terms expressed, or by necessary or fair implication, regard being had to the purpose of the grant. The authority is not inherent in any public corporation to levy assessments upon property. Such authority can not be inferred from the general welfare clause of the charter, or from similar general provisions, or from the general words· of an act, unless the words employed clearly grant the authority. The authority to levy assessments will not be extended by construction, for as against the corporation the construction is strict, and nothing in its favor will be inferred, except such matters as are clearly implied from the express words of the act. If any reasonable doubt arises as to the existence of the authority, it will be resolved against the corporation assuming it. The rule of strict construction is applied rigidly when the right and authority to exercise an extraordinary power is assumed by the corporation. Applying these rules to the charter act of the City of Elkins, and the parts above referred to, we do not think that the authority to. levy the

special tax or assessment complained of can be inferred from the first clause of section 28, which simply grants power to the council to do certain things generally, and makes no provision for the payment of the cost of doing those things by the abutting property owners. Nor do we think such authority can be inferred from the second clause of said section, which provides that the council may cause drains and gutters, etc., to be kept in good order, free and clean by the owners and occupants of the real property adjoining thereto. Nor do we think such authority is granted or can be inferred from either of the two clauses of said section, one of which provides for the draining of a lot covered or subject to be covered by stagnant water by or at the expense of the owner, and the other for the proper draining of city lots by or at the expense of the owner or occupant thereof. A lot abutting a street or alley may be covered by stagnant water, or liable to become so, and may need draining, but this would not justify the inference that the city can build a public sewer in the street and assess all or any part of the cost of such public sewer upon all the abutting lot owners, regardless of whether all the lots are covered or liable to be covered by stagnant water, or needed draining, or not. Public sewers in a street or alley are not alone for the purpose of draining lots or lands, although it is true lots or lands may be drained by them if connection therewith be made for that purpose, but they are for many other purposes, such as draining the streets and providing a proper way to dispose of the refuse and rubbish collecting thereon, and others, and the size, character and cost of such sewers are governed by the many uses for which they are designed. It does not seem reasonable that the legislature intended that the owners of abutting real estate should be made to pay in whole or in part the cost of such sewers on the ground alone that the lots of such owners might be drained thereby. We do not think such authority can be maintained under the general welfare clause of said section. If the City of Elkins desires to protect persons and property, public or private, within the city, or promote the health, safety, comfort and well being of the inhabitants by the exercise of this extraordinary power of levying special assessments upon part of the taxable property therein only, it must have clear and not doubtful authority

to do so.   And we think this clause does not even purport
to give such authority.   The right to pass ordinances not
repugnant to the Constitution of the United States, or of
this State, necessary to carry into effect the powers granted
by the charter act of the City of Elkins, does not create
power or authority, but only permits the city to carry into
effect the powers granted.   An ordinance is without author-
ity unless made pursuant to the powers granted by the legis-
lature.   Neither by the provisions of the charter act above
referred to, nor by any other provisions of the act, is the
authority to levy the special tax or assessment complained
of expressly given, and we think no such authority is clearly
implied from the language used.   Therefore, we conclude
that the City of Elkins has no authority under its charter act
(chapter 151, Acts of 1901) to collect the whole or any part
of the cost of the public sewers placed by it in its streets and
alleys, by means of the levy of a special tax or assessment
against them for that purpose.

We do not deem it necessary, from the view we take of
this case, to decide the question, whether or not such tax
or assessment, if the same had been levied pursuant to
authority given by the legislature, could legally be collected
from property other than the real estate abutting the streets
and alleys in which sewers were placed.

The only other question presented by the record is whether
or not a court of equity has jurisdiction in this case.   We
think the jurisdiction of a court of equity is clearly estab-
lished under the circumstances of this case, and that it lies in
all cases where a municipal corporation acts *ultra vires* in the
levying of a tax or assessment and attempts to collect it.
This question was thoroughly discussed and considered by
JUDGE SNYDER in delivering the opinion of the Court in
*Christie v. Malvén*, 23 W. Va. 677; and was also discussed
and considered in the case of *Crim v. Town of Philippi*, 38
W. Va. 122; and in the case of *Tygart's Valley Bank v.
Town of Philippi et al.*, 38 W. Va. 219; and in other cases
before this Court.   We think these cases uphold the juris-
diction where the act of levying the tax or assessment is *ultra
vires* and its collection is attempted, upon proper bill filed by
the party or parties subject to such tax or assessment, to en-
join its collection.

For the reasons above stated, the plaintiffs' bill in this cause is sufficient and the motion to dissolve the injunction and dismiss the bill should not have been sustained by the circuit court, but the injunction should have been made perpetual; therefore the decree entered by the circuit court of Randolph county in this cause on the 14th day of May, 1904, wholly dissolving the injunction awarded by the judge of the circuit court on the 15th day of February, 1904, and dismissing the plaintiffs' bill, is reversed; and this Court proceeding to enter such decree as the circuit court should have entered, it is adjudged, ordered and decreed that the injunction awarded by the judge of the circuit court of Randolph county, in vacation, on the 15th day of February, 1904, be and the same is made perpetual.

*Reversed.*