WILLIE FOUGHT *v.* ALLEN C. MURDOCH *et al.*

(No. 7652)

Submitted October 10, 1933.    Decided December 12, 1933.

*Wm. Bruce Hoff,* for plaintiff in error.
*Dan B. Leonard,* for defendants in error.

LITZ, JUDGE:

Petitioner, Willie Fought, instituted this proceeding in certiorari in the circuit court of Wood County to review the action of defendants, Allen C. Murdoch, as mayor of the City

of Parkersburg, and C. Gail Hitt, G. W. Abels, Vinton Murphy, and George Huber, as members of the city council, in levying a special assessment against a corner lot owned by him in Parkersburg for the construction of a sewer line along the side thereof after it had been assessed for sewering on the end. The trial court dismissed the petition on demurrer.

The pertinent parts of the city charter (Chapter 1, Municipal Charters, Acts 1929), providing for the levying of special assessments for street improvements, follow: ''The council of the City may cause any street, alley or public place, or any part thereof, to be paved, repaved, or resurfaced with cobble stone, brick, concrete, or other suitable material, curbing and suitable sidewalks laid, and a sewer or sewers to be constructed therein, or to have such paving and/or sidewalks thereon constructed without the construction of such sewer or sewers, or such sewer or sewers constructed without such paving, * *' * the whole cost thereof, subject to the provisos hereinafter contained * * *, shall be assessed to and paid by the owners of the lots, or fractional part of lots abutting or abounding on that part of the street, alley or public place so improved, paved or sewered, and against the said lots or fractional parts of lots in proportion to the number of feet frontage of each, * * * provided, that the cost of paving and sewering intersections of streets, public alleys or public places, and the proportion for lots or parts of lots or property against which no assessment can be legally made, shall be assessed to and paid by the city * * *.'' Section 48a. ''All general and special laws of the State of West Virginia, governing cities, not inconsistent with the provisions of this act, shall apply to and govern the city of Parkersburg.'' Section 3. The general law (section 3, article 9, chapter 8, Code 1931), authorizing special assessments by municipalities for sewering, is subject to the following limitation: ''Where a corner lot has been assessed on one end it shall not be assessed on the side.''

Petitioner contends that as the charter provisions for sewer assessments must be liberally construed in favor of the taxpayer, and since the provisions themselves contemplate instances in which ''lots or parts of lots'' cannot be legally assessed, the statutory limitation should be applied.

The power of municipalities to lay special levies for local improvements must be granted by express words or necessary implication, and any reasonable doubt of the right to impose the levy will be resolved in favor of the property owner. *Dancer* v. *Town of Mannington,* 50 W. Va. 322, 40 S. E. 475; *Cain* v. *City of Elkins,* 57 W. Va. 9, 49 S. E. 898. Applying this rule of construction, we are of opinion that the assessment in question is unauthorized.

Respondents, contending that the assessment is authorized under the charter, for the validity of such authority, rely on the general rule stated in 5 McQuillian Municipal Corporations, sec. 2205, p. 687, and 44 C. J. 551, that a corner lot may be assessed for municipal improvements made in either street on which it abuts. The only cases, however, cited by either authority, dealing with sewering assessments, are *People* v. *Adams,* 18 N. Y. S. 443; *Rich* v. *Woods,* 82 S. W. (Ky.) 578; *Geeser* v. *McLane,* 161 S. W. (Ky.) 1118; *City of Covington* v. *Schlosser,* 133 S. W. (Ky.) 987; and *Ruby* v. *City of Madisonville,* 247 S. W. (Ky.) 354. The New York case justified assessments for sewering on two sides of a corner lot by assuming that the property would be benefited by the drainage of surface water through the sewers from both streets. The Kentucky cases uphold a second sewering assessment against a corner lot, with the following reasoning: ''A lot fronting on two streets has more advantages, and consequently more value, than if it fronted on one only. As equality of public burdens is a cardinal consideration in their imposition, it must follow that the lot that gets twice as much advantage from a public improvement as another must pay twice as much of the cost of the improvement as the latter.'' *Rich* v. *Woods,* cited. Defendants also cite two Indiana cases (*Coburn* v. *Bossert,* 13 Ind. App. 359, 40 N. E. 281, and *Byram* v. *Foley,* 17 Ind. App. 629, 47 N. E. 351) as supporting this view. In the *Coburn* case the charter of the city of Indianapolis provided that when a sewer was intended and adopted only for local use of property owners adjoining the street in which it was built, ''the whole cost of the improvement shall be paid for by the property holder abutting on such street and alley in the same manner and to the same extent as street improvements are paid for.'' The appellate

court in construing this provision held that the city had power to assess the property owner for the construction of a sewer in front of his lot, although he received no benefit therefrom, and had previously been assessed for a sewer in the rear of the lot. A similar charter provision was before the court in the *Byram* case. A sewer had been constructed in an alley abutting property which had previously been assessed for a sewer in a street in front of the property. The court in upholding the validity of the second assessment said: "The appellants property was, within the plain letter of the statute, subject to the assessment, on the ground that the sewer for which it was assessed was a local one."

These authorities fail to recognize a distinction which may exist between the benefits to property from surface improvements and sewering. A corner lot which has been paved on the one side will be benefited by a pavement on the other side because of its increased accessibility. If, however, an improved lot is being adequately served by one sewer, we are unable to see how it would be benefited by a second. Special levies are based upon the theory of benefits to the property assessed. *City of Norfolk* v. *Ellis*, 26 Gratt. 224. "The law is well established that the right to make a special assessment against land for improvement is based on the theory that special benefits accrue to the land from such improvement. If there are no special benefits to the land, there should be no special assessment against it." *Bowling* v. *City of Bluefield*, 104 W. Va. 589, 140 S. E. 685, 687.

There is a line of authorities definitely holding that if in fact there is no additional benefit to the property from the second sewering, the assessment therefor will be invalid. "In accordance with the rule that property which has not been benefited by a local improvement is not liable to an assessment or tax therefor, and that property should not be assessed for an improvement where improvements theretofore made are sufficient for its needs and where no additional benefit results from the new improvement, it has been held that, where lots are adequately drained by existing sewers so that they will derive no benefit from a sewer thereafter constructed, they cannot be assessed for the construction of such sewer."

44 C. J., sec. 2991, p. 588. *Gerlach* v. *Spokane,* 85 Wash. 129, 147 Pac. 870; *Bailey* v. *Sioux Falls,* 28 S. D. 118, 132 N. W. 703; *Boyden* v. *Brattleboro,* 65 Vt. 504, 27 A. 164; *Rogers* v. *Salem,* 61 Or. 321, 122 Pac. 308; and *People* v. *Desmond,* 186 N. Y. 232, 78 N. E. 857.

In all events, the fact that the new sewer may not afford additional benefit to the lot served, should weigh strongly against a construction of the municipal charter in question, requiring a second charge against the property.

The order, complained of, is reversed and the case remanded.

<em>Reversed and remanded.</em>