[No. 10361.   Department Two.   August 22, 1912.]

SEATTLE MATTRESS & UPHOLSTERY COMPANY, *Appellant*, v. THE CITY OF SEATTLE, *Respondent.*

OLIVER T. ERICKSON *et al., Appellants*, v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—ASSESSMENTS—INTEREST ASSESSABLE. An ordinance providing that the city treasurer shall collect from the owner of any subdivision of a lot such proportion of the assessment thereon as the city engineer shall certify to be chargeable to such subdivision, was not intended to authorize the segregation of a leasehold interest from the fee.

SAME—ASSESSMENTS—OBJECTIONS—FAILURE TO INCLUDE PROPERTY. An assessment is not invalidated by the failure to assess all the property within the assessment district, in the absence of an affirmative showing that the omitted property was specially benefited, the presumption being that it was not benefited.

SAME. The mere fact that real estate omitted from assessment was contiguous to the improvement is not sufficient to overcome the presumption that it was omitted because not benefited.

SAME—ASSESSMENTS—REVIEW—PARTIES ENTITLED—MODIFICATION. Where the court reduced an assessment against the leasehold and charged part against the fee, the lessee cannot complain that the court had no power to originate an assessment against the fee, the owner of the fee not complaining, and Rem. & Bal. Code, § 7551, providing that the court on appeal may correct or modify the assessment.

SAME—ASSESSMENTS—APPORTIONMENT—EVIDENCE—SUFFICIENCY. An assessment for a permanent street fill, charging two-thirds of the cost against leaseholds and one-third against the fee, is sustained, where the lease had twenty-one years to run, with the preference right of renewal, the leaseholds received the whole of the present benefit and are relatively more enhanced in value than the fee, and the evidence as to the benefits was conflicting.

Appeal from a judgment of the superior court for King county, Albertson, J., entered February 15, 1912, upon findings in favor of the city, modifying an assessment, upon appeal from the confirmation of the city council.   Affirmed.

[1]Reported in 125 Pac. 1013.

*Murphy & Wall,* for appellants.

*James E. Bradford* and *Howard A. Hanson,* for respondent.

ELLIS, J.—This is an appeal from a judgment of the superior court for King county, modifying an assessment, as confirmed by the city council of Seattle, upon certain leasehold interests in the west 120 feet of lots 2, 3, 4, and 5, of block 279, Seattle tide lands. The ordinance pursuant to which the assessment was levied provided for the improvement of Fourth avenue, south, between Seattle boulevard and Holgate street, together with certain other streets, by filling the same. The appellants objected to the assessments, and were accorded a hearing before the city council. Their objections were overruled and the assessments were confirmed by ordinance. The two appeals were taken from this action of the council to the superior court. The appeals were consolidated for trial. The appellants are owners of leasehold interests in the tide land, the fee being in the state. The assessment roll as originally made and confirmed by the council cast the entire burden of the assessment against these tide lands upon the leasehold interests. Among the objections urged before the city council, and made the basis of the appeal to the superior court, was the following:

"That the tax sought to be assessed against the leasehold interests of your objector in said property is as great as the tax levied upon lots and parcels of land upon the same street wherein the fee simple title to the same is in private individuals, and where there is no outstanding leasehold interest or other title."

The appellants urged before the city council a segregation and apportionment of the assessments between the fee and the leasehold interests. The council refused to make the apportionment. On the appeal after a full hearing the superior court sustained this objection, and by decree modified the assessments by apportioning one-third to the fee and two-thirds to the leasehold interests, and directed the city council to cor-

rect and modify the assessment roll accordingly. From that decision, the appeal to this court was prosecuted.

The appellants contend (1) That the assessments are invalid; (2) That the court had no power to segregate or apportion the assessment between the fee and the leasehold interests; (3) That, if the court had such power, it has not justly exercised it in this case. We will consider these in their order.

(1) It is urged that the assessments were invalid because not made in accordance with a city Ordinance No. 4,165, which authorizes the city treasurer to collect from the owner of any subdivision of any lot or tract upon which an assessment has been or shall be made such portion of the assessment as the city engineer shall certify to be chargeable to such subdivision, in accordance with the provisions of the charter and ordinances in force when the original assessment was made. This ordinance was manifestly not intended as a part of the original proceeding in making the assessment roll, but to provide an easy and convenient mode of segregation for collection of the assessment where title to a part of a lot or parcel against which the assessment was originally levied as a whole has changed ownership. It was never intended to apply to a segregation of *interests,* as a leasehold from the fee but to a segregation of the *tract* or *parcel* by subdivision.

It is also urged that the assessment is void because not made in accordance with the ordinance providing for it, nor in accordance with the city charter. The ordinance provided that the assessment district should have bounds as prescribed by the city charter. The city charter provides that, unless otherwise provided by the ordinance creating it, the assessment district shall extend to the middle of the adjoining blocks. Block 279 of the Seattle tide lands is 660 feet square. The line of the district therefore extended 330 feet back from Fourth avenue, south, which runs along the west side of the block. The lots here in question are 330 feet deep and extend back to the east line of the district. Only the

west 120 feet of these lots was assessed, though all of the west 270 feet was included in the appellants' leaseholds. The remainder of these lots, comprising the east sixty feet, is owned by and included in the right of way of the Oregon & Washington Railway Company and of the Great Northern Railway Company. This sixty-foot strip is within the half block from Fourth avenue, south. The appellants contend that the failure to place any of the assessment for the improvement upon this sixty-foot strip invalidated the whole assessment. There is no complaint because the assessment was not spread over the entire leaseholds, but only that the railroad land was not assessed. The objection before the council was "that some of the parcels of land specially benefited by said improvement and within said improved district have not been assessed."

The city council, in failing to assess this strip and in overruling this objection and confirming the assessment roll, must have done so upon the ground that in its judgment this strip received no benefit from the improvement. Manifestly, if it was not specially benefited, it could not be assessed, whether lying within or without the district. Neither before the council nor on the appeal to the superior court was any evidence offered by the appellants showing, or tending to show, that this strip was specially benefited, either actually as railroad property or potentially by increasing its value as real estate for any use. While there are many authorities to the contrary, we think that both the better reasons and the more persuasive authorities sustain the view that, in the absence of such evidence, the courts must indulge every presumption in favor of the regularity and propriety of the action of the assessing officer or body. This is a general rule applicable to all official action. To have any standing here, the appellants should have shown affirmatively that the omitted property was benefited. In the absence of such showing, we must presume that it received no benefit and was therefore properly omitted.

"Every. reasonable presumption is made in favor of the regularity and propriety of the action of public officers. Accordingly, a property owner who complains of the omission of land from a local assessment must show affirmatively that such land was benefited by such improvement and that the omission thereof was improper.   The mere fact that certain land was omitted from the assessment is not sufficient to invalidate the assessment unless the complainant further shows that such property should have been included. The fact that after an assessment has been levied, the city confesses in court that certain property is not benefited thereby, and the court accordingly sets aside such assessment as to such property does not, in the absence of fraud or of a showing that the omitted property was in fact benefited, invalidate the assessment as to the remaining property.   The mere fact that contiguous property is not assessed does not invalidate the assessment in the absence of a showing that such property is benefited, where the assessment is to be levied on property benefited and there has been no determination that contiguous property has been benefited." 1 Page and Jones, Taxation by Assessment, § 643.

"But counsel seem to regard the mere fact that the evidence shows the existence of a street railway which is not specially assessed, as alone sufficient to impeach the commissioners' report.   But we are aware of no rule of law which makes the existence of real estate contiguous to an improvement conclusive evidence that it is specially benefited by the improvement.   How could the jury apportion special benefits to the street railway company pursuant to section 31 (sec. 147), *supra*, without evidence of the extent of such benefits?   There is no evidence in the record that this street railway is benefited by this improvement.   Appellant might, possibly, have reduced its assessment by proving that the street railway was specially benefited and the extent of its benefits.   But there can be no presumption in that respect in the absence of evidence." *Chicago, R. I. & P. R. Co. v. Chicago*, 139 Ill. 573-580, 28 N. E. 1108.

See, also, *Culver v. Chicago*, 171 Ill. 399, 49 N. E. 573; *Rich v. Chicago*, 152 Ill. 18, 38 N. E. 255; *Holdom v. Chicago*, 169 Ill. 109, 48 N. E. 164; *Warren v. Street Comr's of Boston*, 187 Mass. 290, 72 N. E. 1022; *Beals v. James*,

173 Mass. 591, 54 N. E. 245; *King v. Duryea*, 45 N. J. L.
258; *City of Kansas v. Baird*, 98 Mo. 215, 11 S. W. 243,
562; *Kansas City v. Bacon*, 157 Mo. 450, 57 S. W. 1045.

(2)   In support of the second contention, namely, that
the court had no power to apportion the assessment between
the leasehold interests and the fee, the appellants argue that
they have not had the benefit of the judgment of the city
council as to how much of the assessment the fee, and how
much the leasehold interests, should bear, and that the court
should have remanded the roll with direction to the council
to determine these amounts.   But this matter had already
been before the council.   Upon the hearing of appellants'
objections, that body had said that the leasehold interests
should bear the whole assessment.   The statute governing
appeals in such cases (Laws 1901, p. 242), declares that:

"The judgment of the court shall confirm, correct, modify
or annul the assessment in so far as the same affects the prop-
erty of the appellant."   Rem. & Bal. Code, § 7551.

The jurisdiction of the superior court to reduce the assess-
ment upon the leaseholds was invoked by the appellants them-
selves.   The assessment was modified at their instance.   As-
suming that the owner of the fee could successfully contest
the assessment as to the fee because it was originated by the
court instead of the council, we fail to see wherein that assess-
ment is a matter of any concern to these appellants.   If the
assessments on their leasehold interests have been reduced to
equitable amounts in proportion to the benefits, it is a matter
of no moment to the appellants whether the assessment on the
fee be valid or not or whether it is ever paid or not.   What-
ever may be said as to the part of the assessment placed upon
the fee, there can be no pretense that the court has originated
or created an assessment as against the leaseholds.   It has
merely modified and reduced an assessment already made so
far as the leaseholds are concerned.

The case of *Coast Land Co. v. Seattle*, 52 Wash. 380, 100
Pac. 856, cited by appellants, has no bearing upon the case

here presented. There the whole charge was *assessed* against the fee. The action was brought to enjoin a sale of the leasehold to pay the assessment against the fee. The argument was made that the leasehold alone was benefited, and hence it alone should respond to the assessment. The court said:

"Inasmuch as the assessment was not made against its [the land company] interest, but is made upon the entire property, it was not called upon or given an opportunity to contest whether its interest in the property was the sole interest benefited, and it must be given this opportunity before the charge is irrevocably fixed against its interest."

However pertinent this language might be, as applied to the assessment against the fee in the present case, it is obviously not pertinent as to these appellants. They had their hearing on this very question before the council, and on their appeal to the superior court their assessment was reduced. The appellants had no interest in the assessment of the fee, but only in a reduction of the assessment on their leaseholds. The owner of the fee is not complaining.

(3) Finally, it is urged that, if the assessments are valid and if the court had power to reduce the assessments charged against the leaseholds, the court did not make a sufficient reduction. The leases involved are thirty-year leases and had about twenty-one years to run when the assessments were made. The question was one of special benefits, to be determined on evidence. In the nature of the case, it was not a matter which could be determined with mathematical certainty or exactness. There were almost as many opinions as to the relative benefit to the leaseholds and to the fee resulting from the improvement as there were witnesses. The court heard evidence as to the situation of the property, both before and after the improvement. It reduced the assessment upon the leaseholds by one-third. It is argued that, the fill being a permanent improvement, the fee will receive the greater benefit. That, of course, is in a sense true, but the leases provide that the lessees have the preference right of renewal and

it is plain that the leaseholds receive the whole of the present benefit. It seems reasonable that the present market value of the leasehold is relatively much more increased by the improvement than is the present market value of the fee. Upon a consideration of the whole evidence we cannot say that it warranted a greater reduction than that made by the court. Finding nothing in the record to justify a reversal, we affirm the judgment.

MOUNT, MORRIS, and FULLERTON, JJ., concur.